BOHM, respondent, v. DUNPHY et al., appellants.

1   333
8   318
8   320
8   321
1   333
12  557
12  599
31* 539
31* 542

LANDLORD AND TENANT — *distraint for rent superseded.* The common-law right of distraint for rent is not applicable to the condition of this Territory, and has been superseded by the statutory remedies which have been given to the landlord.

PRACTICE — *review of issues of law in defective answer.* This court will review on appeal an issue of law raised by a demurrer to the answer, which has been waived by the filing of a replication, if the answer is defective in matters of substance which cannot be cured by the verdict.

DAMAGES — *measure of, for distraining rent illegally.* In an action to recover damages for the wrongful taking and conversion of money by another under a distress warrant for rent due from a third person, the party is entitled to recover the amount that was so taken and converted, with legal interest for its detention, and exemplary damages.

DAMAGES — *awarding of exemplary — recklessness.* Exemplary damages are only given when a willful act is complained of, or there is either a wanton recklessness or a deliberate intention to injure.

EVIDENCE — *exemplary damages — mitigation — legal advice.* In a suit to recover exemplary damages, a party can prove, as a mitigating fact, that he had acted in good faith under the advice of an attorney.

PARTNERSHIP — *surviving partner can recover exemplary damages — evidence.* A surviving partner can recover exemplary damages for the wrongful conversion of partnership property; but personal matters that affect only the deceased cannot be given in evidence, although they might have been properly admitted in aggravation of the damages during his life-time.

*Appeal from the Third District, Lewis and Clarke County.*

ON February 27, 1868, Bohm and Aub brought this suit against Dunphy, Bentley, Armitage, Morse and John Doe to recover $25,000, damages. The complaint alleged that the defendants entered into the banking-house of plaintiffs in Helena on February 26, 1868, and by force and violence, willfully and wrongfully took and carried away $2,000, the property of plaintiffs, and that they detained $1,935 of said sum.

Dunphy, Bentley and Armitage filed their answer on March 7, 1868, and alleged that they took $1,935 on certain premises owned by Dunphy and Bentley, on a portion of which plaintiffs had their banking-house ; that T. P. Ames had used and occupied the same as a tenant of Dunphy and Bentley ever since November 14, 1866, and owed therefor on

February 26, 1868, $1,965; that Dunphy and Bentley, with Armitage as their bailiff, entered on said premises and took said amount "justly as for and in the name of a distress for the said rent so due;" that Dunphy and Bentley during said time were landlords of Ames of the premises; and that said amount remained due.

Morse answered on March 6, 1868, and denied every allegation of the complaint.

The plaintiffs then filed their demurrer to the answer of Dunphy, Bentley and Armitage for the following reasons: "No. 1. The allegation that rent was due defendants from Thomas P. Ames does not justify defendants in robbing the bank of plaintiffs. No. 2. There is no allegation in said complaint that plaintiffs are tenants of Dunphy and Bentley, or owe them rent. No. 3. Because Dunphy and Bentley have no right to take or distrain the money or other property of the plaintiffs for any rent that may be due them from any other persons. No. 4. Because under the laws of Montana Territory there is no provision for a distress for rent, and the common-law doctrine of distress is in conflict with the statutes of this Territory."

The demurrer was overruled in October, 1868, by the court, MUNSON, J., and plaintiffs excepted.

On October 29, 1868, the death of Aub was suggested, and the action was ordered to be continued in the name of the survivor Bohm.

The plaintiffs filed their replication to the answer of Dunphy, Bentley and Armitage on October 31, 1868, and denied the allegations thereof, and alleged that Bohm and Aub on October 25, 1867, rented their banking-house from Ames; that they had paid Ames the rent as soon as it was due; that Dunphy and Bentley were never the landlords of Bohm and Aub, and that there was no privity between them; that the lease from Dunphy and Bentley to Ames expired, and Dunphy and Bentley obtained a judgment for the recovery of said premises on November 7, 1867, under the forcible entry and detainer law of Montana; that an appeal was taken from said judgment, which was pending

at the time the money was taken from plaintiffs; that defendants did not impound said property so taken, as required by the common law of distraint; that defendants converted the same to their own use, and plaintiffs could not replevy it; and that defendants did not comply with said law of distraint.

The distress warrant was directed to Armitage, and, after reciting that Ames owed Dunphy and Bentley $1,937.50 for the rent of the premises, concluded as follows:

"Now, therefore, you are commanded to enter upon the said premises above described, and make distress according to law upon any personal property, money or effects which you may find upon the premises aforesaid, and, if the money is not paid, that you make sale according to law.

"In witness whereof we have subscribed this warrant this 22d day of February, A. D. 1868.

"E. M. DUNPHY,

"D. A. BENTLEY."

The following return was indorsed on this warrant:

"Helena, *February* 26, 1868.

"In pursuance of the within direction I entered upon the premises within named, and distrained upon nineteen hundred and thirty-five dollars ($1,935.00), and delivered the same to Dunphy & Bentley.

"J. ARMITAGE."

The action was tried in July, 1870, before Symes, J., and the jury returned a verdict for plaintiffs.

The eighth instruction given by the court was as follows: "The fact that the defendants acted under advice of counsel can have no force in the case. If you believe, from the evidence, that it was the intention and purpose of defendants to take said money and appropriate it to the payment of their debt from Ames to Dunphy and Bentley, and not to hold it and give the plaintiffs an opportunity to replevy the same, the law implies that such act was willful, and you may find such exemplary damages as you consider just."

The other facts appear in the opinion.

CHUMASERO & CHADWICK, for appellants.

By the common law all movable goods and chattels which might be found upon the premises, whether the goods of the tenant, under-tenant or other person, might be taken as a distress for rent. All the evidence introduced on the questions relating to respondent renting the premises from Ames, and that of privity between appellants and respondent, was immaterial, and tended to mislead the jury from the true issues. Taylor on. L. & T., § 583; *Holt* v. *Johnson*, 14 Johns. 425; *Spencer* v. *McGowen*, 13 Wend. 256; 1 Smith's Lead. Cas. 534, 535.

The case of *Dunphy and Bentley* v. *Ames* had been appealed to the district court. Under our statute there must be a trial *de novo;* the whole case is left to stand on the pleadings only. The answer of Ames shows a continuing tenancy. The court erred in allowing the proceedings in this case to be introduced in evidence.

The English courts hold that money, if it can be identified, is the subject of distress. The property in controversy is national currency, and each bill was numbered and lettered and could be identified.

Our statutes provide expressly that the common law of England, so far as it is applicable and of a general nature, shall be the law, etc. Acts 1865, 356.

The acts of the States, adopting the common law, fix the date of its existence, and generally adopt it as it existed when the acts were passed. Our courts have decided that the statutes of England, in amendment of the common law, are a part of it. 1 Kent's Com. 522–524; *Patterson* v. *Winn*, 5 Pet. 241.

The act 11 George II, ch. 19, changes what had been previously held to be the law, and declares: "That when the distress is for rent, an irregularity or unlawful act subsequently done by a party shall not render him a trespasser *ab initio;* but the party aggrieved by such unlawful act may recover for the damages sustained by such act." *Sackrider* v. *McDonald*, 10 Johns. 264.

The impounding of property taken as a distress, was for the purpose of keeping it safely. It was to be kept as a pledge; but a change was made by statute 51 Henry III, authorizing a sale in fifteen days. 3 Kent's Com. 474. If the property was not replevied in five days, the landlord had a right to sell. Stat. Wm. & M., ch. 5; 8 Anne, ch. 14.

Respondents, on February 27th, commenced their action of trespass. On the 29th they commenced their action of replevin, and subsequently dismissed it. Respondents elected to bring trespass, and waived their right to replevin.

The court erred in its instructions on the question of exemplary damages. A mere willful and wrongful taking of property does not authorize a verdict for exemplary damages. Either malice, violence, oppression or wanton recklessness must mingle in the controversy. *Kennedy* v. *N. M. R. R. Co.*, 36 Mo. 351; *Honeseifer* v. *Shable*, 31 id. 243; *Freidenheit.* v. *Edmondson*, 36 id. 226. When a party acts under the advice of counsel, it does away with the presumption of malice, and vindictive damages are not proper. Sedgw. on Dam. 460 (marg.); *Thompson* v. *Mussey*, 3 Greenl. 305; *Stone* v. *Swift*, 4 Pick. 393; *Blunt* v. *Little*, 3 Mason, 102; *Commonwealth* v. *Bradford*, 9 Metc. 268.

The only damages recoverable in this case would be the money taken with interest. Sedgw. on Dam. 550–553 (476 marg.). No special damages were claimed or proved.

The money taken was the property of Bohm & Aub. On the death of Aub the partnership was dissolved. The damages sworn to was the loss of the use of the money of the partnership to the partnership, which was not in existence. The administrator should have been made a party.

The rule "*actio personalis moritur cum persona*" is applicable. Broom's Leg. Max. 613; 1 Bouv. Law Dic. 64. In an action by personal representatives of a decedent, in respect of an injury to the personal estate of the decedent, the damages must be measured by the injury, and exemplary damages cannot be recovered. Sedgw. on Dam. 467 (marg).

E. W. & J. K. TOOLE, for respondent.

There is but one form of action for the enforcement of a right or redress of a wrong. Prac. Act, § 1. Distraint was the only remedy of the landlord at common law. He could not recover in debt or ejectment during tenancy, nor distrain for an uncertain demand. 1 Coke on Lit. 95, *a ;* Taylor on L. & T. 564.

The statute gives new rights and remedies : forcible or unlawful detainer, assumpsit, contract and attachment. Taylor on L. & T. 525 ; *Renwick* v. *Morris,* 7 Hill, 575 ; *Stafford* v. *Ingersoll,* 3 Hill, 38. The appellants' demand was for so many dollars, and they took twenty-five per cent more than was due.

The authorities cited by appellant, as to proceedings under distress for rent, are under statute, and not common law. *Smith* v. *Stewart,* 6 Johns. 48. The relation of landlord and tenant must exist at the time of the distress. Notice to quit, suit for possession, appearance and judgment treats tenants as trespassers. 2 Coke on Lit. 144 ; Taylor on L. & T. §§ 488, 564, 565. ·At the time of the distress the tenant must be rightfully in possession and the landlord have a right to distrain. Respondent was a sub-tenant, had paid his rent and was not liable for rent. If liable to have property taken upon a distress, it should have been impounded. *Bain* v. *Clark,* 10 Johns. 424 ; 1 Smith's Lead. Cas. 219–221 ; 1 Coke on Lit. 152, 230 ; 2 Pars. on Cont. 481.

Appellants did not impound the money, but converted it to their own use and destroyed its identity.

We have adopted the common law of England applicable to this country. The right of distress for rent is inconsistent with the genius of our government and the rights and remedies afforded by law.

The sub-tenant never attorned to the landlord for rent and was not in arrears for rent. There is a difference between the right of a landlord to distrain for rent the property of persons not liable therefor found on the premises, and a conversion of that property by which claimant was deprived of his writ of replevin.

The right of action survives in this case. The action is not for damage to character, feelings or person, but a tortious trespass upon the property of respondents, who were partners. Barb. on Parties, 158, 167 ; Sedgw. on Dam. 372, 453, 548.

WARREN, C. J. This action is brought to recover damages for the wrongful taking and conversion by defendants of $1,935 in treasury notes of the United States and national bank notes, the property of the partnership firm of Bohm & Aub.

The joint answer of Dunphy, Bentley and Armitage, by pregnant negatives, admits the taking of the money, and as new matter justifies it as having been done under a distress warrant for rent due defendants, Dunphy and Bentley, under a lease from them to one Ames, of certain premises, upon which the money in question was found, and from which it was taken. A demurrer was interposed to this answer, which was overruled, and afterward a replication was filed by plaintiff Bohm. Aub, the other partner, having died after the commencement of the suit, and the cause proceeding by leave of the court in the name of the survivor. The cause was tried by jury, who found a general verdict for plaintiff for $3,397.25, upon which judgment was rendered against defendants Dunphy, Bentley and Armitage. Defendant Morse, who answered separately, not being included in the judgment. A motion for a new trial was made and overruled, from which order, and from the judgment, defendants appeal.

With the view we take of this case it will be necessary to notice but few of the errors assigned. Upon the authorities cited in the exhaustive brief of appellants and that of the respondent, we are of opinion that the common-law right of distress for rent conflicts with the spirit of the legislation of this Territory, and is inapplicable to our condition. The statutory remedies given to the landlord by attachment, and for detainer of leased premises, supersede the right of distraint for rent, which had its origin in the feudal relations,

and was the only means at common law to enforce payment of rent due. In all of the States in which the right is recognized in this country the legislatures have regulated the manner of its exercise and provided means for its execution, and the harshness and rigor incident to its origin have been mitigated. We have precedents in several States where, as here, the common law, so far as applicable, has been expressly adopted, for holding that the right of distraint for rent, even as modified by the acts of parliament cited by appellant in aid of it, is inconsistent with our institutions, and that it is peculiarly inapplicable here. Appellant claims that, inasmuch as the plaintiff did not abide his demurrer to the answer, but filed a replication, his demurrer was thereby waived, and the issue of law thereby raised cannot be reviewed on this appeal. This would be true if the answer was defective only in form or in such matter as could be cured by a verdict, but it is our duty, in reviewing the errors assigned on an appeal, to review the entire record in respect to the matter assigned as error. The answer here purports to make a full defense by way of confession and avoidance, no replication was necessary, and the matter in avoidance being insufficient in substance for that purpose, to that extent an immaterial issue was formed which was wholly incapable of being tried, and no ruling of the court, or verdict of a jury, could give it validity. Had the verdict been for defendants, the plaintiff was entitled to a judgment *non obstante veredicto*. All that remained under the pleadings was the question of damages, which might properly have been assessed by jury. We are of opinion that, upon assessment of the damages, the facts alleged in the answer might, perhaps, have been given in evidence as a partial defense in mitigation of damages, even if not pleaded at all, but certainly were proper for the consideration of the jury when pleaded for that purpose, although not good as a full defense to the action.

In reference, then, to the measure of damages, the only thing before the jury. The complaint does not allege spe-

cial damages and none were provable under it as such. The plaintiff could only recover such damages as directly and necessarily resulted from the act complained of, which would be the amount wrongfully taken, with legal interest for its detention, and such exemplary damages as the jury might give under proper instructions of the court, and within reason, under all the circumstances proven.

In this view all the instructions relative to the right and manner of distress are immaterial, except in so far as they might have misled the jury, which appellant does not claim.

The real error assigned, which is all we are to review, consists in the instructions upon the subject of exemplary damages. These are only given where the act complained of is willful, or there is either wanton recklessness or a deliberate intention to injure, and the court below erred in instructing the jury upon this subject that the fact that defendants acted under the advice of counsel could have no force. It is well settled that such fact, if in good faith, is proper for the consideration of the jury in connection with the question of exemplary damages, which have for their foundation the animus and circumstances attending the act. It appears from the evidence that the defendants in this case acted under the advice of an attorney whose recognized experience and abilities gave weight to his opinion upon a controverted question of law, which might well have commanded the confidence of defendants, and this fact should have gone to the jury for their consideration.

Regarding this action as prosecuted by Bohm as surviving partner to recover damages for the conversion of partnership property, we hold that it survived the death of Aub to the extent of such recovery, and that exemplary damages, being punitory in their nature, might also be recovered at the suit of the survivor, although matters personal in their nature to the deceased, which in his life-time might have been given in evidence in aggravation of damages, were improperly admitted.

For the errors in relation to the assessment of the damages contained in the instructions the cause is reversed and remanded for a new trial in accordance with the principles of this opinion.

*Exceptions sustained.*